## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES LOHNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.   12-cv-946-SCW |
| | ) | |
| JAMES FENOGLIO and PHIL MARTIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

Before the Court are two motions for summary judgment filed by Defendants. Defendant James Fenoglio has filed a motion for summary judgment (Docs. 81 and 82) arguing that he was not deliberately indifferent to Plaintiff's headaches/skull pain and protrusion at the base of his cervical spine.   Defendant Phil Martin has also filed a motion for summary judgment (Docs. 84 and 85) arguing that he was not deliberately indifferent to Plaintiff's pain at the base of his skull.   Plaintiff has filed Responses (Docs. 90, 91 and 92, 93, respectively).   Both Fenoglio (Doc. 95) and Martin (Doc. 96) have filed Reply briefs.   Based on the following, the Court **GRANTS** both Defendants' motions for summary judgment (Docs. 81, 82 and 84, 85).

### II.   Findings of Fact

Plaintiff brings his Complaint for deliberate indifference for medical care that he received while at Lawrence Correctional Center.   Plaintiff was previously housed at Dixon Correctional Center and there began experiencing head pain in January 2011 (Doc. 82 Ex. 1 at pp. 7, 9).   Plaintiff was transferred to Lawrence Correctional in June 2011 (*Id.* at p. 8).   Plaintiff saw a nurse practitioner on August 8, 2011 for an eczema facial rash and was prescribed Triamcinolone, a steroid

ointment (Doc. 82 Ex. 3 at p. 3; Ex. 1 at p. 24).   Plaintiff complained of pain in his back and skull on October 6, 2011 (Doc. 91 Ex. A at pp. 45-47; Doc. 82 Ex. 3 at p. 5).   The nurse who saw him prescribed 200mg of Ibuprofen and referred him to the doctor (*Id.*).   Plaintiff saw Defendant Fenoglio on October 10, 2011 (Doc. 82 Ex. 3 at p. 6).   At that time, Plaintiff complained of neck and back pain.   Fenoglio noted that he appeared healthy and could move easily (*Id.*; Ex. 2 at p. 51). Plaintiff was prescribed Ibuprofen for his pain (*Id.*; Ex. 2 at p. 53).

Plaintiff again saw Fenoglio on December 2, 2011 (Doc. 82 Ex. 3 at p. 8).   At this time, Plaintiff claimed that the light hurt his eyes and the back of his neck felt like he had an elephant sitting on it (*Id.*; Ex. 2 at pp. 58-59).   Fenoglio noted that Plaintiff did not appear to be in distress and that his eyes were open when the lights were on (*Id.*; Ex. 2 at pp. 59-60).   Plaintiff was prescribed more Ibuprofen.   At that time, Fenoglio also ordered that Plaintiff's skull and cervical spine be x-rayed and x-rays were taken on December 14, 2011 (Doc. 82 Ex. 2 at pp. 61-62; Ex. 3 at p. 9).   The result of the x-rays were negative (Doc. 82 Ex. 2 at p. 64; Ex. 4 at p. 2).

Plaintiff presented a sick call on December 21, 2011 complaining of pain, trouble sleeping, and heartburn (Doc. 82 Ex. 3 at p. 9; Ex. 2 at pp. 68-69).   Plaintiff saw Fenoglio again on December 23, 2011 (*Id.* at p. 11; Ex. 2 at pp. 71-72).   At that time, Fenoglio believed that Plaintiff's symptoms might be anxiety-tension headaches and noted that he was being weaned off of Klonopin. Fenoglio noted in his chart that Plaintiff should follow up with a psychiatrist (*Id.*).   Fenoglio testified that he did not make an appointment with the psychiatrist as Plaintiff's unit would make the appointment (Doc. 82 Ex. 2 at p. 73).   Plaintiff did see a psychiatrist, Dr. Kowalkawsi, on December 29, 2011 (Doc. 82 Ex. 4 at p. 4).

Plaintiff was next evaluated by a nurse practitioner on January 11, 2012, this time for eczema (Doc. 82 Ex. 3 at p. 12).   Plaintiff indicated at that time that he knew his neck pain was not

due to a topical steroid which he requested from the nurse practitioner (*Id.*).   Plaintiff saw Fenoglio again in March 7, 2012 (Doc. 82 Ex. 3 at p. 13).   Plaintiff presented with knee pain from a previous injury and Fenoglio ordered a physical therapy evaluation (*Id.*; Ex. 1 at pp. 15-16; Ex. 2 at pp. 79-80). He also complained of pain in his neck but Fenoglio found no tenderness and Plaintiff had full range of motion in his neck (Doc. 82 Ex. 2 at pp. 79-80).    Fenoglio also prescribed Plaintiff Ibuprofen (Doc. 82 Ex. 3 at p. 13; Ex. 2 at p. 80).

Plaintiff next put in a sick call on May 5, 2012 and June 23, 2012 for acid reflux (Doc. 82 Ex. 3 at pp. 15-17).   He was given antacids.   Fenoglio saw Plaintiff on June 26, 2012 (Doc. 82 Ex. 3 at p. 18).   At that time, Plaintiff presented with a lump on his neck, which Defendant Fenoglio diagnosed as a "Hampton's hump" although he meant to label it a "Buffalo hump" which is a hump caused by the overuse of steroid creams (Doc. 82 Ex. 1 at p. 18; Ex. 3 at p. 18; Ex. 2 at pp. 92-93). Fenoglio testified that he knew what he meant, he just wrote down the wrong word (Doc. 82 Ex. 2 at pp. 93-94).   He also labeled it a "steroid hump" (Doc. 82 Ex. 3 at p. 18).    Fenoglio believed the hump was caused by Plaintiff's treatment of his rash with hydrocortisone creams which he was prescribed and sometimes received from fellow inmates (Doc. 82 Ex. 2 at pp. 93-94; Ex. 1 at pp. 24-25).   As such, Fenoglio ordered that Plaintiff stop using the steroid cream (Doc. 82 Ex. 2 at p. 94). At the June 26, 2012 visit, Fenoglio also prescribed Plaintiff Tramadol, a non-narcotic pain medication, for his neck pain (*Id.*).   Fenoglio also ordered x-rays of Plaintiff's spine which were, again, normal (Doc. 82 Ex. 2 at p. 96; Ex. 4 at p. 3).

Fenoglio also ordered a serum cortisol blood test for Plaintiff to check the levels of steroid in his blood (Doc. 82 Ex. 2 at pp. 95-96).   The test was taken on July 10, 2012 and were in the normal range (Doc. 82 Ex. 4 at p. 5).   Fenoglio saw Plaintiff on July 25, 2012 and prescribed Prilosec for Plaintiff's acid reflux (Doc. 82 Ex. 3 at p. 19; Ex. 2 at pp. 98-101).   Fenoglio also prescribed

Plaintiff Tylenol for pain as Plaintiff refused to take his other prescribed medication (*Id.*).   On August 6, 2012, Fenoglio realized his error in categorizing Plaintiff's hump in the records and changed the term from Hampton to Buffalo to reflect the correct diagnosis (Doc. 82 Ex. 3 at p. 20; Ex. 2 at pp. 102-103).

Fenoglio then saw Plaintiff on August 16, 2012 and noted that the hump appeared to be smaller (Doc. 82 Ex. 3 at p. 21).   Fenolgio noted that the hump was non-tender and that he believed his current condition was anxiety and that he was anxious about the hump on his neck (Doc. 82 Ex. 2 at pp. 105-107).   At that time, Fenoglio prescribed more Prilosec and more Ibuprofen. Fenoglio saw Plaintiff against on August 20, 2012 and again noted that the lump appeared to be smaller (Doc. 82 Ex. 3 at pp. 21-22).   At that time, Plaintiff was prescribed naproxen instead of Ibuprofen.   He also encouraged Plaintiff to relax and reduce worrying as stress intensifies anxiety (Doc. 82 Ex. 2 at p. 112).   On August 21, 2012, Fenoglio consulted with his colleagues to determine whether Plaintiff should be sent to an endocrinologist and sought to determine from commissary records whether Plaintiff was still purchasing steroid cream (Doc. 82 Ex. 3 at p. 22; Ex. 2 at pp. 108-113).   Fenoglio left Wexford Health Sources on October 1, 2012 (Doc. 82 Ex. 2 at p. 117).

Also on August 20, 2012, Defendant Phil Martin attended the appointment with Plaintiff and Fenoglio (Doc. 85 Ex. B at pp. 17-18).   Plaintiff had previously written grievances to Martin regarding Fenoglio's treatment, particularly regarding Fenoglio not addressing all of Plaintiff's complaints (Doc. 85 Ex. B at pp. 6-7).   Martin appeared with Plaintiff at the appointment to serve as an advocate and to make sure that Plaintiff was seen by Fenoglio for all of his complaints, but he could not tell Fenolgio how to treat Plaintiff (*Id.* at pp. 17-18, 19).   Martin was the Healthcare Unit Administrator at Lawrence Correctional Center (*Id.* at pp. 15-16).   While Martin has training as a nurse, he did not provide medical treatment to Plaintiff (*Id.* at pp. 12-14, 16).   His job as administrator

was to make sure that the contracted medical supplier, Wexford, met their contract requirements, which included making sure Wexford had all of their medical personnel at the prison, making sure they had supplies, making sure they had all the services that are rendered, and that they complied with the rules and regulations (*Id.* at p. 16, 21). He could not direct a doctor in how to treat a patient (*Id.* at p. 20). Plaintiff submitted grievances regarding Fenoglio's treatment to Martin who would direct them to Fenoglio for an answer about his treatment (*Id.* at p. 7). Martin could not make the decisions on the adequacy of treatment received because he does not treat inmates and cannot judge whether a nurse or doctor treated a patient adequately (*Id.* at p. 9). Thus, those grievances would be directed to the physicians themselves. Martin also would answer grievances that could be answered by reviewing Plaintiff's medical chart (*Id.* at p. 7). Martin also reviewed Plaintiff's records regarding Plaintiff's hump and after reviewing the dictionary about Hampton's hump, and discussing the term with Fenoglio, it was determined that Fenoglio meant to label Plaintiff's hump as a Buffalo hump rather than Hampton's hump (*Id.* at p. 33).

## III.   Conclusions of Law

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).   A fact is material if it is outcome determinative under applicable law.   *Anderson,* 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).   A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant.   *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).   The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).   Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007).   *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

A.      **Deliberate Indifference**

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).   In order to prevail on such a claim, a plaintiff must

first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

Defendants do not argue that Plaintiff's head and neck pain constituted a serious medical condition, instead they argue that they were not deliberately indifferent to that condition. The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference.   "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"   *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).**   "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).**   Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough.  *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653**.   "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted).**   An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his

needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 821-22 (7th Cir. 2012) (*Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).   "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

**B.    James Fenoglio**

Defendant Fenoglio argues that he is entitled to summary judgment because the evidence in the record shows that he was not deliberately indifferent to Plaintiff's pain.  Plaintiff argues that while Fenoglio treated Plaintiff for his Buffalo hump, he failed to address Plaintiff's continued complaints of skull pain.

However, the evidence in the record shows that Defendant Fenoglio was not deliberately indifferent.  The evidence suggests that Defendnat Fenoglio sought to identify and treat the source of Plaintiff's skull pain.  The record indicates that Fenoglio initially prescribed Plaintiff with Ibuprofen when he presented with neck pain as Fenoglio noted that Plaintiff was able to move his neck easily (Doc. 82 Ex. 3 at p. 6; Ex. 2 at pp. 51-53).   When Plaintiff returned to Defendant almost two months later with continued skull and neck pain, Fenoglio continued Plaintiff's prescription but also ordered x-rays (*Id.* at p. 8; Ex. 2 at pp. 59-62).   While Plaintiff argues that the x-ray results are not in the record, the results were included in Defendant Fenoglio's brief and show that the results were normal (Doc. 82 Ex. 4 at p. 2).   Throughout Fenoglio's time at Lawrence Correctional Center, he continued to see Plaintiff and sought to diagnose the source of his pain.   In December 2011, Fenoglio

began to believe that the headaches were caused by stress and he noted that Plaintiff was in the process of weaning off of Klonopin (Doc. 82 Ex. 3 at p. 11; Ex. 2 at pp. 71-73).   Fenoglio referred Plaintiff to the psychiatrist, and although Plaintiff argues that Fenoglio never talked to the staff psychiatrist or made an appointment for Plaintiff, Plaintiff saw the psychiatrist only six days after his meeting with Fenoglio and Fenoglio's recommendation in December (Doc. 82 Ex. 4 at p. 4; Ex. 2 at p. 73). Fenoglio continued to treat Plaintiff for his pain, changing medication, obtaining additional x-rays which were also normal, and seeking additional tests to determine the cause of his pain, including a serum cortisol blood test (Doc. 82 Ex. 2 at p. 94, 96; Ex. 4 at pp. 3, 5).   The evidence indicates that Fenoglio changed medications to Plaintiff on at least three occasions and sought testing to determine Plaintiff's pain; there is no evidence that he continued with an ineffective treatment that would constitute deliberate indifference.  *See Kelley v. McGinnis*, **899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective);** *Greeno v. Daley*, **414 F.3d 645, 654 (7th Cir. 2005),** *Berry v. Peterman*, **604 F.3d 435, 441 (7th Cir. 2010)(case survived summary judgment where evidence in the record suggested that doctor had not identified effective pain medication or the cause of tooth pain, but refused to refer to seek obvious alternative of referring inmate to a dentist);** *Arnett v. Webster*, **658 F.3d 742, 759 (7th Cir. 2011) (not deliberately indifferent when took measures to address the pain by providing medication, even if ineffective, in the short time as record didn't show that "no minimally competent professional would have provided this regime of treatment");** *Ray v. Wexford Health Sources, Inc.*, **706 F.3d 864, 866 (7th Cir. 2013) (not deliberately indifferent when inmate examined often, x-rays taken, and medications prescribed).**

Plaintiff makes much of the fact that Plaintiff was weaning of Klonopin which can cause a side effect of headaches and that Fenoglio never addressed this issue.   However, the evidence

indicates that Fenoglio recognized the Klonopin and Plaintiff's psychiatric issues as a source of Plaintiff's pain and sought to address those issues.   Fenoglio noted on at least two occasions that he thought that stress and anxiety was the source of his skull pain and noted that he was weaning off of Klonopin (Doc. 82 Ex. 3 at pp. 11, 21; Ex. 2 at p. 112).   As a result of this diagnosis, Fenoglio recommended that Plaintiff be seen by the staff psychiatrist and Plaintiff actually saw the psychiatrist six days after his visit with Fenoglio (Doc. 82 Ex. 4 at p. 4).   Fenoglio also educated Plaintiff on relaxing and reducing stress in order to control his anxiety.   The evidence in the record indicates that Fenoglio continued to identify and address the source of Plaintiff's pain during his time caring for Plaintiff.

The evidence also indicates that Fenoglio adequately addressed the hump on Plaintiff's neck.   While Plaintiff argues that Fenoglio misdiagnosed Plaintiff's hump, referring to it as a Hampton's hump rather than a Buffalo hump, the record shows that this was not a misdiagnosis but a mere error in labeling.   Fenoglio testified that he knew that Plaintiff was suffering from a steroid hump or Buffalo hump, caused by overuse of steroid cream, but inadvertently called it a Hampton's hump (Doc. 82 Ex. 2 at pp. 93-94; Ex. 3 at p. 18).   Phil Martin's testimony backs up Fenoglio's testimony that he knew Plaintiff suffered from a Buffalo hump and that he just put down the wrong term for the hump (Doc. 95 Ex. B at p. 33).   The medical records also indicate that Fenoglio recognized Plaintiff suffered from a steroid hump and that Fenoglio did not erroneously diagnose Plaintiff as he argues (Doc. 82 Ex. 3 at p. 18).   The evidence also suggests that Fenoglio took steps to treat Plaintiff's hump.   He ordered that Plaintiff stop using steroid creams and prescribed Tramadol for his pain.   He also ordered a serum cortisol blood test to check Plaintiff's steroid levels and followed-up with Plaintiff on three occasions, noting that Plaintiff's hump was shrinking (Doc. 82 Ex. 2 at pp. 95-96; Ex. 4 at p. 5; Ex. 3 at pp. 21-22).   Further, Fenoglio consulted with his colleagues about

referring Plaintiff to an endocrinologist about his hump and sought to obtain his commissary records to make sure Plaintiff was not purchasing steroid cream (Doc. 82 Ex. 3 at p. 22; Ex. 2 at pp. 108-113). The evidence here indicates that Fenoglio was actively seeking an effective treatment for Plaintiff's condition and his actions do not amount to deliberate indifference.   Accordingly, Defendant Fenoglio is entitled to summary judgment.

## C.      Phil Martin

Here, the Court finds that Defendant Phil Martin is also entitled to summary judgment on Plaintiff's claim that he was deliberately indifferent to his neck pain.   The evidence before the Court shows that Defendant Martin was the Healthcare Unit Administrator at Lawrence Correctional Center (Doc. 85 Ex. B at pp. 15-16).   Although Martin had training as a nurse, he was not a medical doctor and could not override a doctor's treatment decisions (*Id.* at pp. 12-14, 20, 89).   As an administrator he reviewed grievances, including grievances from Plaintiff regarding treatment for his skull pain.   The evidence shows that when Martin reviewed Plaintiff's grievance he then submitted the grievance to Fenoglio who answered the grievance by informing Martin what care he was providing.   Martin also referred Plaintiff back to Fenoglio and even attended the August 20, 2012 appointment to serve as an advocate.   He attended the appointment to ensure that Fenolgio addressed all of Plaintiff's complaints (*Id.* at pp. 17-18).   He also consulted with Fenoglio when Plaintiff grieved about his need for lab work and asked Fenoglio to contact Martin about his medical determination (Doc. 93 Ex. D at p. 1).

In reviewing Plaintiff's grievances, the evidence indicates that Martin relied on his findings in the medical records and deferred to Fenoglio's medical determinations.   As Martin was an administrator reviewing Plaintiff's grievances and not Plaintiff's treating physician, Martin was allowed to rely on Fenoglio's diagnosis and treatment of Plaintiff.  *Johnson v. Snyder*, **444 F.3d 579. 585-86**

(7th Cir. 2006), *overruled on other grounds Hill v. Tangherlini*, 724 F.3d 965, 967 n. 1 (7th Cir. 2013) (health care administrator who reviewed medical records and relied on doctor's diagnosis in responding to inmate's grievance was not deliberately indifferent); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (prison official who reviewed complaints and *verified with staff that inmate was receiving treatment was not deliberately indifferent); Hayes* v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference when grievance officer investigated and referred the complaint to medical staff); *Spruill v. Gillis*, 372 F.3d 218, 236 (7th Cir. 2004) (non-medical official is able to rely on the belief that a prisoner is in capable hands when under the care of medical experts). Thus, in doing so, there is no evidence that Defendant Martin was deliberately indifferent to Plaintiff's skull pain. The evidence shows that he reviewed Plaintiff's grievance, checked with Fenoglio about Plaintiff's treatment, and deferred to Fenoglio's treatment. His reliance on Fenoglio's treatment decisions is justified and does not constitute deliberate indifference. *See Johnson*, 444 F.3d at 585-86.

Plaintiff makes much of the fact that Martin took a more active role in Plaintiff's treatment than merely reviewing and responding to the grievance. Plaintiff points out that Martin corrected Fenoglio's diagnosis of a Hampton's hump, determining after reviewing a dictionary that the actual name of the hump Fenoglio referred to was a Buffalo hump. Plaintiff also notes that Martin attended Plaintiff's medical appointments to ensure that all of his complaints were addressed by Fenoglio.

While Plaintiff argues that this evidence shows that Martin took a more active role in Plaintiff's treatment than simply reviewing a grievance, this evidence does not indicate deliberate indifference on Martin's part. Rather, it shows that Martin was actively reviewing Plaintiff's treatment and making sure that he got proper treatment and diagnoses from Fenoglio. In fact Plaintiff sums up

Martin's activities in his brief by stating that "Martin…attended a medical exam appointment between Dr. Fenoglio and Plaintiff to ensure all of Plaintiff's complaints were addressed, reviewed Plaintiff's grievances and acted on them by attending the 8/20/2012 appointment and discussing with Dr. Fenoglio the medical need of lab work Plaintiff claimed he needed." (Doc. 93 at pp. 8-9).   Although Plaintiff seems to suggest that Martin's activity constitutes deliberate indifference, Plaintiff fails to explain how Martin's actions in ensuring Plaintiff was provided medical care constituted deliberate indifference.   Plaintiff suggests that Martin's care was inadequate, but the facts Plaintiff cites to indicate that Martin sought to obtain treatment for Plaintiff's pain. Martin personally took steps to address Plaintiff's complaints in reviewing the medical records and attending Plaintiff's appointments. He discussed Plaintiff's medical care with Fenoglio and requested Fenoglio's determinations on Plaintiff's treatment.   None of these actions constitute deliberate indifference.

Further, there is no indication that Martin had authority over Fenoglio or could change Plaintiff's treatment as it was set out by Fenoglio.   Plaintiff tries to argue that Martin diagnosed Plaintiff's hump, but the evidence indicates that Martin merely noted a scrivener's error, where Fenoglio mistakenly labeled the hump as Hampton when he actually meant Buffalo (Doc. 85 Ex. B at p. 33).   Further, Martin was a nurse and administrator; he was not a medical doctor, did not provide medical treatment, and could not advise or override a medical doctor's decision.   There is no evidence to suggest that he actively participated in Plaintiff's care other than to ensure that Plaintiff received medical treatment for all of his issues.   Thus, the Court finds that Defendant Martin is entitled to summary judgment on Plaintiff's deliberate indifference claim as there is no evidence that Defendant was deliberately indifferent to Plaintiff's skull pain.

### IV.    <u>Conclusion</u>

Accordingly, the Court **FINDS** that both Defendant Fenoglio and Defendant Martin are entitled to summary judgment on Plaintiff's deliberate indifference claims and **GRANTS** both Defendants' motions for summary judgment (Docs. 81, 82 & 84, 85).   As no further claims remain for trial, the Court **DIRECTS** the Clerk to issue judgment accordingly.

**IT IS SO ORDERED**.
DATED: July 11, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge
